Shinseki is a Japanese prison in the northeastern part of Tokyo, Japan. Shinseki is a prison in the northeastern part of Tokyo, Japan. Next case is Steven Spicer v. Secretary of Veterans Affairs, 2013, 7142, Mr. Baird. Thank you, Your Honor. May it please the Court, I'd like to begin and address the Court's inquiry about Federal Rule of Appellate Procedure 43A and the status of a personal representative. Rule 43A states that if a decedent has no representative that this Court may take direct appropriate proceedings. We have contacted Donald Spicer, who is the veteran's father, who represented to us that the veteran had no assets and will not have a personal representative. So under the applicable statute, which is, as we pointed out in our motion, 38 U.S.C. 5121, only Donald Spicer would be qualified to present a claim to the accrued benefits. The father stands in the shoes of the son for purposes of perfecting the appeal. Should the father succeed on the merits, he would only be rewarded to the extent of the funeral costs, correct? That's correct, Your Honor. And there probably needs to be a substitution in our files of the father now being the appellant, correct? I mean, Mr. Stephen R. Spicer is deceased. Correct, Your Honor. He's no longer the appellant. The father is the appellant, correct? And some filing will be made in the clerk's office that will correct that capture, right? Correct, Your Honor. But I didn't understand the government to argue that you couldn't be standing here, right? Your Honor, we did contact the government, and that's correct. The government agreed. I mean, the legal issue is right. The fact that the recovery may be a small amount of money compared to what it might otherwise have been for the veteran, right? The amount of money doesn't affect the jurisdiction. Most certainly, Your Honor. Let's get to the merits. Are you challenging the interpretation of 5003? Yes, Your Honor, we are. 5003, diagnostic code 5003, explicitly states that a rating of 10% is for each such minor group affected. That's not what it says, each such major joint or group of minor joints. Group of minor joints, yes, Your Honor. And that's not what's involved here, right? And of course, we don't apply the regulation to the facts, but in terms of interpretation, the interpretation is quite clear, isn't it? Major joint or group of minor joints, it's crystal clear. Well, it is true that a group of minor joints is more than one minor joint, Your Honor. The regulation doesn't require multiple involvements of a minor joint group. What the regulation says is a rating of 10% is for application for each such group of minor joints affected. And plainly, under the plain language of the regulation, a group is affected when one of its members is disabled. No different than, for example, if one of the members of this panel called in sick this morning, the whole panel would be affected. And I would note that language. But that's reading group out of the regulation. That's as if it said a minor joint. No, Your Honor. Respectfully, group is very important to the regulation because it prevents sacking. A group is affected when one of its members is disabled. In addition, the word group is very important because no matter how many members of the group, the minor joint group, are affected, the regulation states that the veteran still only gets a 10% rating. In other words, no matter how many joints in a single minor joint group are affected, the entire disability is rated as one disability with a 10% rating. Absent the group language, it would just instruct that minor joints are treated the same as major joints, and they are not. It's critical that the regulation prevents this stacking problem. And, in fact, the other applicable regulations. The government maintains that Section 4.45F is definitional as opposed to hortatory. Yes, Your Honor. I think you need to address 4.45F because my understanding of your take on that section is that it basically is saying, well, a group of minor joints is treated like a major joint for treatment, period, move on, and that there's no definitional aspect to the regulation. Correct, Your Honor. If you look at the language of 4.45F, the language is relatively clear that it's not definitional language. The government submits that 4.45F defines a group of minor joints as multiple involvement. First of all, as a matter of English, that just doesn't make sense that a group is defined as multiple involvement. I mean, involvements are different than a group. Multiple involvements are considered groups. Yes, Your Honor. I think we can peel away the words around there that are unnecessary, but I think the regulation says, just as I said, why isn't that definitional? First of all, to the extent that it's definitional, it is defining— What are involvements? What are multiple involvements? What does that mean? What do those words mean? Multiple involvements means more than one minor joint. More than one minor joint. So in the case of Littlefinger, it would be both the dip and the pip, right? Yes, Your Honor. And in that case, the regulation is clear that multiple involvements are considered a group rateable on a parity with a major joint. So it's articulating what is considered a group of minor joints rateable on a parity with major joints. So what that's saying, again, is preventing the stacking problem. If you have multiple involvements, they are to be rated on a parity. The government doesn't dispute your anti-stacking results in the reg. I read their brief to say, yeah, of course it has that purpose. I mean, it's a little unclear whether it prevents anti-stacking between two fingers, but it prevents anti-stacking within one digit that's got different joints in it. The statute's words, the regulation's words themselves are a little bit confusing on that point, but the regulation does not purport to set out anything exclusive. And again, I would compare this with the regulation. Well, it depends on how you look at it. If you look at 4.45 as definitional, multiple involvements, you have to have multiple involvements to have a group of minor joints. Multiple involvements means more than one joint in the digit. Then it would look like it's definitional. I mean, that, to me, struck me that's the entirety of the government's argument. Yes, Your Honor. Even to the extent that it's definitional, though, it is not – first of all, it doesn't say that it's exclusively so. And the government raises the expressio unius argument, and I'd just like to address that quickly because the expressio unius argument would say the expression of one thing does exclude another. But in this case, we're not relying on 4.45F as entitlement to the 10% rating. We're relying on Diagnostic Code 5003. I don't think you could rely on them. If anything, it's harmful that you have to distinguish it. You have to push it aside as having no substantive effect for definitional purposes, and it's purely hortatory. It's simply saying, well, if you've got a group of minor joints, they're treated like a major joint. That's correct, Your Honor. But Diagnostic Code 5003 says that a 10% rating is for each such minor group – for each group of minor joints affected. And the question is, when is a minor group affected? And a minor group is affected when one of its members is disabled. And I would just point out that the language – the other language in 5003, which is the language that applies in the absence of limitation of motion. So that's not the case here. But the language that applies in the absence of a limitation of motion is very clear. The regulation states, with X-ray evidence of involvement of two or more major joints or two or more minor joint groups. Clearly the VA knew how to articulate when it wanted to say involvement of two or more minor joints, and it didn't in this case. You used the word articulate with respect to joints advisably. Yes, Your Honor. What about 5230, though? I mean, 5230 seems to contemplate – I mean, there's a whole menu of situations with respect to various joints, and 5230 makes it pretty clear that if you have arthritis or some kind of degenerative condition with respect to your pinky finger, you get a zero rating. And now I guess you're asking us to look at 5003 and say, well, not necessarily if you just have a single problem joint within your pinky, you can still get recovery. There is no question that we don't dispute. Why don't those two theories conflict? The theories don't conflict because of the actual language of 5003. 5003, by its express language, is a catch-all phrase. It says, when, however, the limitation of motion of the specific joint or joints involved is non-compensable under the appropriate diagnostic code. So the VA, for whatever reason, established a catch-all provision to address the exact situation. Well, non-arthritic. 5230 is non-arthritic. And there's a separate code, 5003, for arthritis, right? That's correct, Your Honor. And 5003 is meant to address specifically this. My point is, under 5230, if you have your ringer little finger, you have any limitation of motion, you get a zero rating. And that would be even if all the joints, right? If you have multiple joints under 5230, it's just because let's assume the problem is because you had originally what your client had, had his finger jammed somewhere. And that the hurt that you're trying to get recovery for is as a result of that. You'd be under 5230. Your client has been diagnosed with arthritis because of a particular condition in the final joint, right? That's correct, Your Honor. And that's what puts you under 5003. That's correct, Your Honor. They address different situations. I'm correct, am I not, Mr. Baer, that the most recent examination of your client before he passed away is reflected at 8263 in the record, where it was showing that with regard to his PIF joint, he has a range of motion from, head range from zero to 90 degrees. I believe that's correct, Your Honor. So that would mean that your client is only arguing that he has the dip joint affected. That is correct, Your Honor. That is correct, Your Honor. Mr. Baer, you wanted to save some time for rebuttal? Yes, Your Honor. And you'd like to do that? Yes, Your Honor. You're going to save it? Yes. Mr. Jabor. Good morning, and may it please the Court. Mr. Spicer's argument in this case is not supported by the plain language of either of the regulations that are at issue in this case. The parties both agree that there are two regulations that govern this case, Diagnostic Code 5003, as well as Section 4.45. Diagnostic Code 5003, we believe, makes it clear on its page that you need multiple minor joints to be affected by limitation of motion in order to get a compensable rating of 10%. But to the extent there is any doubt, and we don't believe there is based on 5003, but to the extent there is any doubt, the phrase group of minor joints in Section 5003 is then defined in Section 4.45. You can't read 5003 without also looking at 4.45 because otherwise you don't know what qualifies as a major joint or a minor joint, so you have to look to 4.45. Mr. Baer says a group is affected if one of its components is affected. I'm not sure that there's enough evidence in the record here to say whether the entire component was affected just because his left finger was affected. But in any event, that's an interesting argument, and certainly the VA could have drafted the regulation that way if it meant to capture that. Certainly it could have said in 5003... It's like the patent concept that a generic claim is anticipated if one species is in the prior option. That seemed to be the argument, and certainly 5003 could have been drafted to allow for one minor joint and to also allow for the stacking concern that is demonstrated in the claimant's brief. For instance, it could have said each such major joint or each such minor joint, but to the extent the minor joints are in the same group, then you don't get more than one 10% rating for those minor joints. It doesn't say anything like that. Really all it says is group of minor joints, and then when you consult Section 4.45... When it says minor joints affected by limitation of motion, does the limitation of motion have to result from arthritis? Talking about minor joints affected by limitation of motion. The fact that... What I'm trying to get at is let's assume you have a situation where the veteran has the dip joint, which is clearly diagnosed to be arthritic, but the second joint, the pip joint, there is their limitation of motion, but it's affected by the fact that the joint had been broken at some stage, but it's not arthritic. I'm just asking for an interpretation. There have to be more than one minor joint affected by limitation of motion. But what happens if one joint or two joints that you're talking about in the finger here, the dip and the pip, and the dip is arthritic and the pip is not? Is that a group? If the pip is affected by limitation of motion, then that would be a group of minor joints that's affected. No, you have to have two of the joints. Right. I think George Cleveridge is asking whether it would matter if only one of the two joints was affected by arthritis. Yes. And is that an argument that was made by Pelham? No, it's not an argument. And it's – there's – I was trying to understand the regulation. Part of Mr. Baer's argument is that the regulation is ambiguous. That's the argument that he tried to advance below. Right. I think there has to be multiple joints that are included as being affected. So I think in your scenario it would qualify. And, again, I think that this is all – to the extent there's any lack of clarity about group of minor joints, 5003 does say that multiple involvement of interphalangeal, metacarpal, and carpal joints are considered groups. And, indeed, Mr. Spicer doesn't contest that that section 4.45 specifically does require multiple joints to be affected. Their argument with respect to 4.45 is simply that it just doesn't govern, doesn't speak to the situation of a single joint. But I think very clearly section 4.45 is definitional, and there is no other regulation they can point to that does speak to the single involvement issue. Mr. Baer makes the point in his brief, this is when he has come to the stage where he is willing to take it on as though there was ambiguity, and he's saying the interpretation that the Secretary is making is litigation-driven. He's saying we shouldn't, we wouldn't give deference to your interpretation if we were to decide this was ambiguous because this is an interpretation he, quote, cooked up for the litigation. And you respond by saying, no, it wasn't cooked up for the litigation. My question is, is this a case of first impression? Is this the first time the department has ever had a veteran who has asked for, under 503, asked for relief where he only had one joint affected, claiming it was a group? We could not locate any prior case in which this argument was raised, and we do think this argument does depart so far from it. Your response to his, oh, we cooked it up for litigation, could have been we've regularly been dismissing these claims for years. Is this the first time the Secretary has ever mounted this interpretation of 5003? This is the first time someone has attempted to claim that, as far as we've been able to determine, that 5003 would allow for a single minor joint. It's the first time the Justice Department has had to respond to this in a brief, and I'm just curious, I can't have a hard time believing that this is the first time the issue has ever come up in the RO. We were not able to locate a specific instance. Oh, thank you. But I will say, our view is that this does depart so far from the plain language, which is indeed why it did not come up at the RO level and did not come up at the board level. It's impossible for the agency to anticipate every single argument that we might be able to. I mean, the board goes out of its way to look for possible readings that might apply when a veteran shows up with a clear diagnosis, especially of arthritis. And so this struck me as odd that the 5003 wasn't thrown to one side automatically. Right. I mean, our view on that is just that the departure is so great from really, if you look at 4.45, you look at 5003, this really just is not even within the contemplation of those regulations. And in terms of this being a litigation position, I think where the cases come out on this is that as long as it is the agency's reason and considered judgment, as long as our position requires it. As Mr. Baird points out, he uses a toe, he uses some analogies that I didn't find very helpful. But imagine a veteran who has got ten digits on his two hands, and the dip joint in every single of the fingers is arthritic. So he has – and say he's got ten toes, and the final joint on all toes is arthritic. No recovery, right? Because there's no – there aren't two joints. No, and – I mean, a group of joints is not the dip joint on two fingers side by side, right? No, and perhaps that was – perhaps this is something that needs to be clarified, is that Section 4.45 does group all the upper extremities together. So all the joints in both hands are grouped together. All the joints in both feet are grouped together. And then there are three vertebrae groups. So there are actually five groups total in 4.45. I mean, again, I don't think that we need to reach that issue, but to the extent there was any lack of clarity on that, there are five minor joint groups. Now – I'm new to veterans' law, but isn't there a doctrine that says we weigh interpretive doubt in favor of the veteran? There's a doctrine like that, right? There is a doctrine that says that. Now, that is – Okay. That is a leveled out – I don't think the doctrine is an order from the Supreme Court, right? I'm sorry? It's an order from the Supreme Court. It's not just a doctrine. That's correct. It is from a Supreme Court rule. Okay. But then there's another doctrine that says reviewing courts are supposed to give agencies deference to the construction of their own interpretations – their own regulations, right? That's right. So how do those two fit together? The cases make clear that deference takes priority. First, you go to the language, and you might not even need to reach the point of deference. But then deference does come next in the hierarchy, and interpretive doubt is last. But on the point of deference, the case law also makes clear that even to the extent there's ambiguity, that doesn't necessarily equate to interpretive doubt. Still, if the secretary's position could be read to be consistent with whatever ambiguity there is, then that interpretation is entitled to deference. And just on the point of whether or not this is some sort of convenient litigating position, the case has come out on this as saying as long as it reflects the secretary's reason and considered judgment, it's entitled to deference. This is the secretary's position, and it does reflect his reason and considered judgment. The secretary has not taken – as in the cases where courts have found that it doesn't reflect, that deference is not owed, courts have found that, for instance, agencies have departed from past administrative practice. Right, but the law establishes that we are supposed to be rightly suspicious of interpretations that arise in connection with litigation. Only if there's some indicia that for some reason this is not the secretary's reason and considered judgment. For instance, if the secretary has interpreted it differently in the past, or if they can point to a situation where we have taken a different position, or where we articulate one position in the brief and then we say something different in the oral argument. Does the rule of interpretive doubt apply to facts, weighing facts, which of course we don't do, or does it apply to interpretation of a regulation? I believe the rule of interpretive doubt has actually only been applied in the context of statute as an initial matter. But again, to the extent you reach the rule of interpretive doubt in respect to a regulation, it applies only after you first read the language and conclude that you can't reach a definitive answer based on the regulation's language. Then as a second step, you have to consider whether or not the agency's position is entitled to deference. And only if you decide that the agency's position is not entitled to deference do you reach that final step of the issue of interpretive doubt, which again, as far as we've been able to determine, has not been applied in the context of regulation. You don't give any credit at all to Mr. Barrow's argument that if one joint and otherwise in a group is affected, the group is affected. You say, well, there's no evidence of that. I think what Mr. Barrow was trying to say is to give an analogy, say, to a basketball team, and you have five members of the team, and the tallest member of the center is thrown out of the game. Does the fact that he's thrown out of the game affect the group? See what I mean? I think what he's trying to say is it's a matter of logic. When you read the language, if you have one digit that's affected in the group, then the group itself is affected because one person in the group has been affected. Like I say, a team. Is a team affected when one member is ejected from the game? Of course the team is affected. And he said that natural reading of the language creates an ambiguity. Taking his, if one digit is affected, the group is affected, at that level, what's your response? Our response is at 5003. I'm sorry, section 4.45 makes clear you need multiple involvement of joints. To the extent that there was any ambiguity, the definition cures it. That's right. There is no ambiguity, but yes, we do think the definition in section 4.45 makes clear you need multiple joints to be involved. I do think we're bordering on a factual determination there as well. And as a final note, I'll also indicate that, you know, to the extent that a veteran has a condition that is not contemplated by the diagnostic code or that falls outside the norm of average impairment, there is a mechanism for dealing with that. I know in Mr. Spicer's brief, he posits a lot of hypothetical scenarios about results that, you know, kind of- A non-schedular rating is what you're going to ask for? Exactly. The veterans are routinely examined to determine whether or not they qualify for an extra schedular rating. In this case, the board analyzed whether Mr. Spicer was entitled to an extra schedular rating for his first left little finger and determined that the rating schedule adequately took into account the level of impairment he was experiencing. So for all those reasons, we respectfully request that the court affirm the decision of the Veterans Court. Thank you. Thank you, Mr. Jabbour. Mr. Baer has just under three minutes for bullet point. Thank you, Your Honor. I'd like to address the government's point that 445F clarifies the definition. The government asserts that 445F defines multiple involvements- defines a minor joint group as multiple involvements. Again, it doesn't make sense to say that a minor joint group is multiple involvements. Those are two very different things. Secondly, Diagnostic Code 5003 does not say you have to have a group of minor joints. It says you have to have a group of minor joints affected. And 445F does not purport to define when a minor group is affected. I'd also like to address briefly the court's questions on deference. The secretary has- the agency, the VA, the secretary has not spoken on this issue. The VA has adopted a specific regulation. It's 38 CFR 14.5 for explicitly dealing with interpretations of regulations. And the regulation says that the general counsel shall issue an opinion. That's how the secretary- that is the exclusive means by which the secretary has established that it will speak as to regulations and what they mean. And we don't have anything like that here. The government's suggestion that the board didn't consider 5003 because it's just so far afield I think is not accurate. The board considered whether the digit was amputated. I think certainly 5003 is a lot closer than whether the digit was amputated. And certainly I think the reality of the situation is that the board just missed it. The board just didn't consider 5003 because it wasn't in front of them and they missed it despite their obligation to do so. Secondly, Judge Chen, you're correct about Garner's presumption that ambiguities must be resolved in the veteran's favor. And your question about deference of the agency, we submit that there is no agency determination here. There's just not. But this court held in DVA versus Govert that the Chevron doctrine was modified by Garner's presumption. So those two doctrines are not irreconcilable. Garner says that interpretive doubt must be resolved in favor of the veteran. And that presents the world, the universe of acceptable decisions from the VA. Nothing in Garner says you have to have the most favorable, the very most favorable decisions. What it says is that there's a universe of decisions that are favorable to the veteran. And in that universe, the VA is obligated to adopt an interpretation when there's ambiguity favorable to the veteran. Thank you, Mr. Baird. I'll take the case and revise it. Thank you.